*In re* Malison, *Petitioner.*

---

*In the Matter of the Petition of* N. MALISON, *et al., for a Writ of Habeas Corpus.*

1. PRELIMINARY EXAMINATION; *Waiver, Under Fear of Personal Violence.* Where a defendant, charged with murder in the first degree, waives a preliminary examination for such offense, he not only waives his right to be let to bail, but also to have the facts of the alleged offense examined into on *habeas corpus;* but where said waiver is made under fear of personal violence, he will not be estopped by reason of such waiver.

2. MURDER; *Defendant Let to Bail, When.* A person charged with murder in the first degree is entitled to be let to bail where the proof is not evident, nor the presumption great.

## Original Proceedings in Habeas Corpus.

PETITION for a writ of *habeas corpus*, filed in this court, April 5, 1887. The petitioner, *N. Malison*, states that—

"He is unlawfully imprisoned and restrained of his liberty by W. D. Fulton, as sheriff of Finney county, Kansas, in the jail at Garden City, in said county; that said imprisonment and restraint are illegal; that the illegality consists in this, to wit: That on the 8th day of March, 1887, he was arrested by the sheriff of Wichita county, on a warrant issued by one L. D. Cowen, a justice of the peace in and for Leoti township, in said county, wherein your petitioner was charged with having, on the 27th day of February, 1887, committed the offense of murder by willfully, deliberately, premeditatedly and feloniously shooting and killing one Charles Coulter, William Rains and George Watkins; that upon making the arrest said sheriff conducted your petitioner, together with thirteen others, then and there charged with the same offense, and then and there arrested by said sheriff, to the office of the said justice of the peace in the town of Leoti, in said county; that the several homicides upon which the said charge of murder was based grew out of animosities engendered by a county-seat fight then and long prior thereto pending between the town of Coronado, of which your petititioner and the other persons so arrested were citizens, and the town of Leoti; that long prior to the time said persons were killed, they, with other rude and lawless citizens of the town of Leoti, had frequently come to the town of Coronado armed with guns, pistols, and other deadly weapons, at which times they would and did, without any provocation whatever, inflict upon whatever citizens of Coronado they would meet, the most brutal and inhuman insults, and commit upon them violent and felonious assaults by shooting at and beating them with guns and pistols, and compelling them, at the muzzles of such weapons, to dance and perform whatever other humiliating acts their cruel imaginations suggested to them, upon the threat of instant death if they failed so to do; that the day on which such persons met their death was Sunday, February 27, 1887, at about four o'clock P. M.; that on the morning of that day said Rains and one Johnson, another citizen of Leoti, came to the town of Coronado and stated to certain citizens there that they would return in the afternoon and 'round up' the town; that in the afternoon of that day they did return to

Coronado, accompanied by said Charles Coulter, George Watkins, Frank Jenness, A. N. Boorey and Emmett Denning, bringing with them a case of beer of which they partook freely, being at the same time armed with one or more forty-five calibre Colt's revolvers each; that immediately after their arrival they entered the drug store of one Schilling, who was sick and in bed, and compelled his attendant to dance while they shot holes in the floor under his feet; that going out on the street they met one F. S. Lilly, afterward arrested together with your petitioner, whom said Coulter struck upon the face with his hand, immediately following it up with a blow upon the head with his pistol, whereupon said Lilly fled; that said persons next fell upon one Lewis Jackson, whom Coulter struck with his pistol, inflicting a severe wound upon his head; that said persons next assaulted Charles and Ezra Loomis, upon whom they committed a violent and deadly assault, in which they shot Ezra Loomis through both legs, and Charles Loomis through the right leg and in the right arm, and inflicted serious wounds upon his head by striking him with their pistols; that at this point the shooting became quite general, being engaged in by all of said persons from Leoti indiscriminately against the citizens of Coronado, and returned by persons in their behalf, to your petitioner unknown, which general and indiscriminate shooting resulted in the death of Coulter, Rains, and Watkins; that the serious result of said meeting greatly infuriated the people of Leoti against all the citizens of Coronado, and that your petitioner and many other citizens of Coronado were threatened by lawless and desperate persons in and about Leoti with death, and with general destruction of the town of Coronado, for which unlawful purpose a large number of Winchester rifles and other deadly weapons were brought to the town of Leoti, and placed in the hands of such lawless and desperate persons; that when your petitioner and his associates were arrested by the sheriff of Wichita county, as aforesaid, they were placed under a guard of fifteen persons, twelve of whom were infuriated and desperate partisans of the town of Leoti, to which place they were taken to appear before said justice of the peace; that when they were brought before the justice they were in great danger, and were in great bodily fear of being shot down or mobbed by the partisans of Leoti, great numbers of whom surrounded and pressed them at all points while passing to and attending at the office of the justice of the peace; that they were especially fearful of such violence in the event they

insisted upon a preliminary examination; that the sheriff having them in charge intimated to them his fear of results should they remain in Leoti over night; that Col. Ricksecker, of the Second regiment of Kansas militia, advised Wm. J. Beck, attorney for your petitioner and his associates, that they waive a preliminary examination before the justice at Leoti, for fear of such anticipated violence; that on account of said admonitions of the officers and the fears they entertained of the violence threatened, and which from the acts of many violent and determined partisans of the town of Leoti appeared to be imminent, and for no other cause or reason whatever, your petitioner and his associates waived their right to a preliminary examination upon said charge at that time and place, whereunto they were also prompted by the belief that such hearing and examination would be awarded to them when they should arrive in a position of safety and out of the reach of said partisans of Leoti.

"Whereupon, said justice of the peace issued and delivered to John Edwards, sheriff of Wichita county, a warrant of commitment, which the sheriff delivered, together with your petitioner, into the custody of said W. D. Fulton, who now keeps, and ever since that time has kept, your petitioner confined in the jail in Finney county, at the town of Garden City, upon no other warrant or pretense whatever; that your petitioner is not guilty of the said crime of murder charged against him; that there is not probable cause to believe your petitioner guilty of said charge; that the acts which resulted in the death of Coulter, Rains, and Watkins, do not constitute the crime of murder nor any felonious killing, but were justifiable; that the process upon which he is committed is illegal in this, to wit, that he never was arrested, or offered, had, or waived a preliminary examination upon any charge against him of having murdered or feloniously killed either Coulter, Rains, or Watkins, separately, but was charged in the complaint and warrant upon which he was arrested with having killed all three of said persons; that the probate judge of Wichita county is a strong partisan of the town of Leoti, and is biased and prejudiced against your petitioner; that a copy of the pretended warrant of commitment, by virtue of which your petitioner is held, is filed herewith as a part hereof, marked 'Exhibit A.'"

Also, on April 5, 1887, other like petitions for writs of *habeas corpus* were filed in this court, by *C. A. Hare, A. H.*

*Wheat,* and *W. A. Frush,* who were then in the custody of
the sheriff of Finney county; and also, like petitions were
filed by *John W. Knapp, Frank S. Lilly, John B. Leahy,
Charles Secrest,* and *James E. Secrest,* who were then in the
custody of Fred. Singer, sheriff of Ford county. The writs
prayed for were forthwith issued and made returnable before
the supreme court, on the 8th day of April, 1887. The afore-
said petitions were all heard together, and the opinion herein
was filed at the June, 1887, session of the court.

*J. W. Ady,* for petitioners.

*J. S. Newby,* county attorney, and *Waters & Chase,* for re-
spondent.

Opinion by CLOGSTON, C.: The respondent insists that be-
cause the petitioners have once waived preliminary examina-
tions for the offense of murder in the first degree, they are not
now entitled to have the charges against them investigated,
or be let to bail. We shall first consider this question: A
defendant who is charged with murder in the first degree, and
who has waived a preliminary examination for such offense,
not only waives his right to be let to bail, but also to have
the facts and circumstances of the alleged offense examined
into on a writ of *habeas corpus.* But to this rule there are
exceptions; as where at the time of such waiver of examina-
tion there are good grounds to believe that if an examination
is gone into, personal violence will be used against defendant,
and under such apprehension an examination is waived, he
will not be estopped by reason of such waiver. To be es-
topped, he must have waived his right to an examination from
a free choice, after a fair opportunity to have an impartial ex-
amination. No mere imaginary danger will be enough to
justify it; but a well-grounded belief, founded upon such in-
formation or observation as would be calculated to excite fear
of bodily harm in the mind of a reasonable person under like
circumstances, will justify it.

After a careful examination of the vast amount of testi-

mony in this case, we are of the opinion that the defendants waived their preliminary examination from fear of personal violence. It must be remembered that at the time of their arrest great excitement prevailed in Wichita county, and great animosity and bad feeling existed between Leoti and Coronado, two rival towns situated within three miles of each other. This feud and animosity had grown up over a county-seat contest and quarrel; and after defendants were arrested they were taken from Coronado to Leoti and confined in the second story of a frame building. Large bodies of armed men were in the town, and many threats of violence were made by the friends of the men who had been killed. Under the fear of further bloodshed, the adjutant general went from Topeka to that county to prevent, if possible, additional trouble, and he, together with other citizens, counseled and advised the defendants to waive their examination. Under these circumstances we can readily see how they might waive their examination without losing their right afterward to have the charges against them investigated; and in doing so they are not estopped from this inquiry.

The second question to be considered is, are the defendants entitled to be discharged or let to bail? The constitution, as well as the criminal code of this state, provides that persons charged with capital offenses shall not be admitted to bail where the proof is evident, or the presumption great. The evidence in this case is voluminous, and conflicting on many questions. On one question, however, there is no dispute: three persons were killed, under such circumstances as to constitute murder, if unexplained, and some others were wounded. As far as defendants are concerned, no explanation has been given; but in view of the fact that the question of the guilt or innocence of the petitioners must be submitted to a jury for their determination, we express no opinion in the case further than to say that on the evidence submitted to us the petitioners must be held for trial; and under all the circumstances, as we now understand them, (necessarily submitted in an unsatisfactory way,) they are entitled to be let to bail.

It is therefore recommended that the petitioners be remanded into the custody of the officers having them in charge, that they be let to bail, and be required to give bonds each in the sum of three thousand dollars for their appearance at the next term of the district court of Wichita county.

By the Court: It is so ordered.

All the Justices concurring.